UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC STEVEN HILL,

             Plaintiff,                        CASE NO. 04-71249

-vs-                                   PAUL D. BORMAN
                                      UNITED STATES DISTRICT JUDGE

TIMOTHY CIOCHON and,
PATRICK THOMAS, jointly
and severally and in their official
capacities,
             Defendants.
_____/

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**BACKGROUND:**

      Plaintiff brings this claim under 42 U.S.C. §1983 alleging a violation of his Fourth and

Fourteenth Amendment rights. Plaintiff alleges that Defendants used excessive force in arresting

him. Plaintiff further asserts a state law claim of assault and battery. Defendants removed this

action from Wayne County Circuit Court on April 2, 2004. Defendants filed for summary

judgment on January 10, 2005. Plaintiff responded on February 1, 2005. Defendant replied on

February 8, 2005. Oral Argument was held on April 6, 2005.

      On February 25, 2004 Dearborn Heights police officers Timothy Ciochon and Patrick

Thomas (collectively "Defendants") observed a vehicle driven by Eric Steven Hill ("Plaintiff")

make a left turn without using a turn signal. (Defendants' Ex. 1, Ciochon Dep. p. 10). The

Plaintiff's vehicle had a cracked windshield and he was not wearing a seatbelt. (*Id.*). Plaintiff's

girlfriend, Jennifer Bell, sat in the front passenger seat. Defendant Thomas approached the

vehicle and asked Plaintiff for his driver's license, registration and proof of insurance. (Defendants' Ex. 2, Thomas Dep. p. 8). Plaintiff replied that he did not have his license with him. (*Id.*). Plaintiff was then placed in the back of the police car.

The officers conducted a LIEN check which revealed that Plaintiff had an outstanding felony warrant for a probation violation. (Defendants' Ex. 1, Ciochon Dep. p. 14). At this point, the parties' testimony differs as to what took place. Therefore, both versions are set forth.[1]

### **Plaintiff's testimony regarding the alleged altercation**

Plaintiff testified that while he sat in the police car, Defendant Thomas walked over and said "you got one hot piece of ass in there" referring to Plaintiff's girlfriend. (Plaintiff's Ex. A, Hill's Dep. p. 18). Plaintiff replied, "she's too hot for your faggot ass," to which Defendant Thomas opened the police car's rear door and spit on Plaintiff's face, and laughed. (*Id.* pgs. 18-19, 22-23).

After Defendant Thomas spit on him, Plaintiff requested that a sergeant be called on the scene. (*Id.* p. 19). Defendant Thomas replied by saying "fuck your rights," and Defendant Ciochon stated, "I didn't see nothing, I don't know what you're talking about." (*Id.* pgs. 20, 23).

At that point, Plaintiff spit on the plexiglass partition separating him from the front of the patrol car and, despite being handcuffed, managed to pull out his cell phone to call his mother and ask her to call for a sergeant since Defendants would not do so. (*Id.* at 21). Defendant Ciochon then opened the patrol car's rear door, and removed the cell phone from Plaintiff's hand

---

[1]The Plaintiff did plead guilty to a charge of resisting arrest stemming from this incident; the factual basis was limited to his furnishing false identification to the officers at the scene. (Supplemental Ex. to Defendants' Motion).

and ripped it into two pieces.  (*Id.* pgs. 21, 24).  Thereafter, Defendant Ciochon punched Plaintiff

five to seven times in the back of the head.  (*Id.* pgs. 22, 24).   Defendant Ciochon then grabbed

Plaintiff by the handcuffs, dragged him from the rear seat, and threw him onto the grass.  (*Id.*).

Defendant Ciochon then pressed his knee into Plaintiff's back to hold him down while

Defendant Thomas maced him.  (*Id.* pgs. 22, 24; Plaintiff's Ex. C, Bell's Dep. p. 16).

Defendants then hit him 15 to 20 times before putting him back into the police car. (Plaintiff's

Ex. A, Hill's Dep. pgs. 26-27; Plaintiff's Ex. C, Bell's Dep. p. 15).  After Plaintiff was secured in

the police car, Defendant Thomas opened the door and sprayed Plaintiff with mace a second

time.  (Plaintiff's Ex. A, Hill's Dep. p. 25).

After several requests to be taken for hospital treatment, Plaintiff eventually was taken to

Garden City Hospital.  (*Id.* pgs. 35-36).

### **Defendants' Testimony relating to the alleged altercation**

Defendants' testimony presents an entirely different version of what occurred.

Defendants contend they advised Plaintiff, who was on his cell phone to stop using it, to which

Plaintiff replied "I don't have to get off the fucking phone, fuck you."   (Defendants' Ex. 2,

Thomas Dep. p. 7, 17).  Defendant Thomas then went to the back seat and attempted to handcuff

Plaintiff whereupon a struggle ensued where Plaintiff elbowed Defendant Thomas and spit on

him.  (*Id.* p. 17).  At this point, additional Dearborn Heights Police officers Greener and

Pellerito, arrived at the scene, and assisted Defendant Thomas in removing Plaintiff from the

patrol vehicle.  (*Id.*).  Plaintiff was then taken to the ground.  (*Id.*).

The officers attempted to handcuff Plaintiff on the ground but he resisted.  (Defendants'

Ex. 1, Ciochon Dep. p. 21).  Plaintiff refused to comply and placed his hands directly under his

body. (*Id.*). While Plaintiff was resisting, Defendant Thomas applied a pressure point to Plaintiff's ear to gain control of Plaintiff. (Defendants' Ex. 2, Thomas Dep. p. 18). Officer Greener also sprayed Plaintiff with pepper spray. (Defendants' Ex. 3).

Ultimately, Plaintiff was handcuffed, placed in a patrol car and transported to the Dearborn Heights Police department. (*Id.*). At Plaintiff's request, he was taken to Garden City Hospital and treated for injuries.

### Plaintiff's treatment at Garden City Hospital

Plaintiff testified that he suffered bruises on his head, face and ribs, an injured left wrist and blurred vision. (*Id.* pgs. 22, 26, 44-45, 50-51). Plaintiff was also diagnosed with an acute head injury. (Plaintiff's Ex. D). Defendants point out that all x-rays were negative and Plaintiff was immediately discharged. (*Id.*).

## ARGUMENTS:

1.     Defendants' Argument

Defendants argue that Plaintiff has failed to establish a §1983 claim against Officers Ciochon and Thomas because their use of force was objectively reasonable under the circumstances. (Defendants' Motion, pg. 3). Defendants argue similarly that they are entitled to qualified immunity because their actions were reasonable under the circumstances. (*Id.* at 6). Lastly, because Defendants contend their force was reasonable, they argue that Plaintiff's assault and battery claim fails. (*Id.* at 8).

2.     Plaintiff's Argument

Plaintiff argues that the evidence in a light most favorable to him, namely his allegations of force against Defendants are more than sufficient to create a genuine issue of material fact as

to his §1983 claim, the lack of qualified immunity for Defendants, and his assault and battery

claim.  (Plaintiff's Response, pgs. 4-12).  Plaintiff also argues that Defendants are not entitled to

state law governmental immunity in regards to his assault and battery claim because it is an

intentional tort which is not recognized as an exception to Michigan's governmental immunity

statute.  (*Id.* at 12-13).

## ANALYSIS

### A.      Standard

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim,

counterclaim, or cross-claim is asserted may "at any time, move with or without supporting

affidavits, for a summary judgment in the party's favor as to all or any part thereof."  Fed. R.

Civ. P. 56(b).  Summary judgment is appropriate where the moving party demonstrates that there

is no genuine issue of material fact as to the existence of an essential element of the nonmoving

party's case on which the nonmoving party would bear the burden of proof at trial.  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial
> responsibility of informing the district court of the basis for its
> motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any," which it believes demonstrate
> the absence of a genuine issue of material fact.

*Id*. at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that

fact "would have [the] effect of establishing or refuting one of the essential elements of a cause

of action or defense asserted by the parties."  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.

1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted).  A dispute over a

5

material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-1211 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

**B.    Discussion**

      **1.    Excessive Force Claim**

To state a claim under 42 U.S.C. §1983, the Plaintiff must show: (1) the allegedly wrongful act occurred under the color of law; and (2) the challenged conduct deprived Plaintiff of a right secured by the United States Constitution or a federal statute. *Parratt v. Taylor,* 451

6

U.S. 527, 535 (1981).

In addressing an excessive force claim under §1983, the analysis begins by identifying the specific constitutional right allegedly infringed by Defendants' use of excessive force. *Coy v. Phelps,* 286 F.3d 295, 299 (6th Cir. 2002). There are three possible constitutional sources - - the Fourteenth, Eighth and Fourth Amendments. (*Id.*). Different standards apply depending on the Amendment. (*Id.*). The Eighth Amendment is not applicable here because it sets the standard for a convicted prisoner, and Plaintiff was not a convicted prisoner at the time of the alleged application of force. The Fourth Amendment applies if the plaintiff was a free person at the time of the incident and the use of force occurred in the course of an arrest or other seizure of the plaintiff. The Fourteenth Amendment has a higher "shock the conscience" standard than the Fourth Amendment and applies to situations not governed by the Eighth or Fourth Amendments.

The Court finds that the Fourth Amendment's standard applies. In *Coy v. Phelps,* the Court held that the use of excessive force during an arrest or other seizure must be analyzed under the Fourth Amendment and its reasonableness standard. In instant case, the Court will analyze Plaintiff's claim of excessive force under the Fourth Amendment because Plaintiff alleges that Defendants used excessive force in the course of his arrest. The Fourth Amendment employs a reasonableness standard for excessive force. This standard "requires that the officer's use of force be objectively reasonable balancing the cost to the individual against the government's interests in effecting the seizure." (*Id.*).

The Court must allow for "the fact that police officers are often forced to make split-second judgments - - in circumstances that are tense, uncertain and rapidly evolving - - about the amount of force that is necessary in a particular situation." *Graham v. Connor,* 490 U.S. 386,

395 (1989).  The Court looks to (1) the severity of the crime; (2) whether the suspect posed an immediate threat to the safety of the officer or others; and (3) whether the arrestee actively resisted arrest or attempted to flee.  (*Id.* at 396).

Defendants bring forth their deposition testimony that Plaintiff was resisting arrest, and that they only used force reasonably necessary to take him into custody.  Defendants also argue that Plaintiff did not suffer physical injuries other than a contusion and some bruising. Therefore, Defendants contend that the force used by them was reasonable and not in violation of the Fourth Amendment.

On the other hand, Plaintiff's testimony if believed by a jury, establishes that Defendants' use of force was unreasonable.  Plaintiff testified *inter alia* that Defendants spit on him, maced him while he was secured in the back of the police car, dragged him out of the police car while he was handcuffed, threw him onto the ground and punched him 15 to 20 times.  (Plaintiff's Ex. A, Hill's Dep. pgs. 22-27).  The Court notes that Plaintiff's testimony was partly corroborated by his girl friend, Jennifer Bell.  (Plaintiff's Ex. C, Bell's Dep. p. 15).

The Court finds that there is a genuine issue of material fact as to whether Defendants' use of force was unreasonable and therefore excessive under the Fourth Amendment.  The Court finds that accepting Plaintiff's allegations as true, a reasonable jury could find that Defendants' use of force was excessive.

*Bass v. Robinson,* 167 F.3d 1041 (6th Cir. 1999) is instructive.  In *Bass,* the plaintiff brought a claim against defendant police officers alleging that his Fourth Amendment rights were violated when the defendants used excessive force to arrest him for narcotics.  According to the plaintiff's testimony, he was walking down the street when one of the defendant officers

ordered him to stop, which he did.  According to the plaintiff, the defendant officer grabbed him and slammed him into a tree.  The defendants presented a different version of the facts.  The defendants claimed that they observed the plaintiff selling narcotics and when they attempted to arrest him, the plaintiff resisted and thereby requiring them to use minimal force.

The magistrate judge recommended that the defendants' motion for summary judgment on plaintiff's excessive force claim be denied because there were issues of fact.  The district court rejected the magistrate judge's recommendation, and granted defendants' summary judgment.

The Sixth Circuit reversed the district court.  The Sixth Circuit held that the plaintiff's allegations taken as true, created a genuine issue of material fact as to whether defendants used excessive force under *Graham's* objective reasonableness standard.

Similarly, here, the Court, taking Plaintiff's allegations as true, finds a question of fact as to whether Defendants' actions were objectively reasonable under *Graham*.

### 2.    Qualified Immunity

Defendants contend that the individual officers are entitled to qualified immunity because they did not violate Plaintiff's constitutional rights.  Under the doctrine of qualified immunity, government officials who perform discretionary functions will not incur liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Hinchman v. Moore,* 312 F.3d 198, 205 (6th Cir. 2003).

Defendants argue that, even if it is determined Defendants violated Plaintiff's constitutional rights, they are still entitled to qualified immunity because their actions were

reasonable.  In *Saucier  v. Katz,* 533 U.S. 194 (2001), the Supreme Court held that the analysis to

determine whether qualified immunity applies is not the same question as whether an officer

used excessive force.  In order to determine whether qualified immunity exists, the Court first

must determine whether plaintiff has alleged facts which, taken in a light most favorable to him,

show that the defendant officer's conduct violated a constitutional right.  If the answer is yes, the

Court must then determine whether that right was clearly established that a reasonable officer, at

the time the act was committed, would have understood that his behavior violated that right.

The Court finds that the first prong of *Saucier* is satisfied - - Plaintiff's allegations in a

light most favorable to him, show that Defendants' violated his rights under the Fourth

Amendment.  Regarding the second prong, the Court finds that it is clear under *Graham v.*

*Connor*, *supra,* that use of force contrary to the Fourth Amendment is excessive, and "clearly

established."  *Saucier* at 201-02.   However, under the second prong, the Court must further look

to whether "it would be clear to a reasonable officer that his conduct was unlawful."  *Id.*  202.

The Court must determine whether the officers could have believed their actions were

lawful.  The *Saucier* Court stated the following:

> [t]he concern of the immunity inquiry is to acknowledge that reasonable mistakes can be
> made as to the legal constraints on particular police conduct.  It is sometimes difficult for
> an officer to determine how the relevant legal doctrine, here, excessive force, will apply
> to the factual situation the officer confronts.  An officer might correctly perceive all of
> the relevant facts but have a mistaken understanding as to whether a particular amount of
> force is legal in those circumstances.  If the officer's mistake as to what the law requires
> is reasonable, however, the officer is entitled to the immunity defense.

*Id.* at 205.

In *Saucier,* a demonstrator who was arrested by the police when he attempted to unfurl a

banner from his jacket, and walk toward the stage at a public event where the Vice President of

10

the United States was speaking. The plaintiff demonstrator alleged defendant police officers

used excessive force when they dragged him away and shoved him into a van. The Court found

qualified immunity appropriate because it found that the defendant officers did not know the full

extent of the threat plaintiff posed, and their use of force was reasonable under the

circumstances.          The Court finds, accepting Plaintiff's claims as true, there are no such

circumstances present in the instant case. The Court finds that Plaintiff's claims, if true,

establish that the Defendants' actions were not reasonable under the circumstances as

contemplated under *Saucier.* The Court finds Plaintiff's allegations that Defendants spit on him,

maced him while he was secured in the back of the police car and punched him 5 to 7 times in

the back of the head cannot be considered reasonable. Accordingly, the Court denies

Defendants' motion on qualified immunity grounds.

### 3.      State law Assault and Battery

Defendants argue that Plaintiff cannot establish that an assault and battery occurred in

this

case. In Michigan, an assault and battery has been defined as follows:

> An assault may be defined as any intentional, unlawful offer of force, or force unlawfully
> directed toward the person of another, under such circumstances as create a well founded
> fear of imminent peril coupled with the present ability to effectuate the attempt if not
> prevented.

> A battery, or assault and battery, is the willful touching of the person of another by the
> aggressor or by some substance put in motion by him; or as it is sometimes expressed, a
> battery is the consummation of the assault.

*Tinkler v. Richter,* 295 Mich. 396, 402 (1940).

Defendants argue that they used reasonable force in detaining Plaintiff, therefore

Plaintiff's assault and battery claim fails. The Michigan Supreme Court has held that

11

"reasonable force" is determined as follows:

> The reasonableness of the force used must be judged in light of the circumstances as they appeared to the officer at the time he acted, and the measure is generally considered to be that which an ordinarily prudent and intelligent person, with the knowledge and in the situation of the arresting officer would have deemed necessary under the circumstances.

*People v. Doss,* 406 Mich. 90, 102 (1979).

The Court finds that Plaintiff testified as to several alleged incidents of force that a jury could find unreasonable under Michigan law.   For example, Plaintiff testified Defendant Ciochon punched Plaintiff five to seven times in the back of the head.  (*Id.* pgs. 22, 24).  Plaintiff testified that after he was secured in the police car, Defendant Thomas opened the door and sprayed him with mace.  (Plaintiff's Ex. A, Hill's Dep. p. 25).  Plaintiff also testified that Defendant Thomas spit on him  (*Id.* p. 19).  Accordingly, the Court finds that a reasonable jury could find Defendants liable on Plaintiff's assault and battery claim.

The Court also finds that Defendants are not immune under MCLA §691.1407.  MCLA §691.1407 (2)  provides governmental immunity for state law tort claims if all of the following are met:

> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>
> (c)  The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

Subsection (3) provides:

> [s]ubsection (2) shall not be construed as altering the law of intentional torts as it existed prior to the effective date of subsection (2) [1986].

12

(MCLA §691.1407 (1), (2) (3)).

Plaintiff sets forth two contentions as to why Defendants are not immune under state law. Plaintiff first contends that government employees who commit an intentional tort are not shielded by the statute. Plaintiff further contends, that even if the statute applies, Defendants' actions were grossly negligent under the statute.

The Court finds that MCLA §691.1407 does not shield Defendants from liability on Plaintiff's assault and battery claim. Government employees who commit an intentional tort are not shielded by the governmental immunity statute. *Sudul v. City of Hamtramck,* 221 Mich. App. 455 (1997). The Michigan Court of Appeals in *Sudul* stated, "[w]e especially also hold that an individual employee's intentional torts are not shielded by our governmental immunity statute, a proposition too frequently is mired in confusion." *Id.* at 458. The Michigan Court of Appeals also held that a tort called "assault and battery by gross negligence" does not exist. *Id.*

As the District Court in *Burns v. Chief Joseph Malik, et al.,* 897 F.Supp. 985 (E.D. Mich. 1995) (Duggan, J.) aptly stated:

> It is expected that individuals, acting in the course of their governmental employment e.g. police officers, may perform intentional act which are intended to cause harm and for which there is no liability. For example, a police officer who is faced with immediate threat of death may deliberately injure another to protect himself. In a given situation, a police officer may use substantial, but necessary, force to subdue a suspect, resulting in injury to the suspect. In such situations, there would be no liability on the part of the police officer, not because of the defense of immunity, but because there was no wrongful conduct i.e. no 'tort.' Conversely, if a governmental employee, acting in the course of his/her employment, negligently injures another, there would be liability against such individual, but for the immunity provided by § 691.1407. In this Court's opinion, in enacting § 691.1407 the Legislature was intending to give individuals carrying out their duties as governmental employees some leeway in their conduct. However, such leeway or protection is taken from those individuals when their conduct amounts to "gross negligence." i.e. conduct so reckless as to demonstrate a lack of concern for whether an injury results. This Court concludes that it would be an absurd result to hold that a governmental employee, e.g. a police officer, who causes injury to

13

another as a result of his or her 'grossly negligent' conduct shall be deprived of the
defense of governmental immunity and held liable, while a fellow officer who
deliberately and intentionally causes injury during the same arrest would be 'immune'
from liability, because §691.1407(2) does not expressly refer to 'intentional conduct' in
its immunity provisions

(*Id.* at 988). (Internal citation omitted) (emphasis in original) (footnote omitted).

The Sixth Circuit similarly held in *Lucas v. Monroe County,* 203 F.3d 964 (6th Cir. 2000)

that Michigan does not immunize its governmental employees, including police officers from

their intentional torts.   The Sixth Circuit has further stated:

Michigan law is clear: Michigan does not immunize its governmental employees,
including police officers, from their intentional torts.  Assault and battery is an
intentional tort under Michigan law.  The jury found that [defendants] assaulted and
battered [plaintiff].  Therefore, [defendants] cannot claim immunity under Michigan law.

*Koehler v. Smith,* 124 F.3d 198, *6 (6th Cir. September 25, 1997) (unpublished).

Accordingly, the Court finds that MCLA §691.1407 does not immunize police officers

from the intentional torts of assault and battery.[2] Thus, the Court viewing the evidence in a light

most favorable to Plaintiff, denies Defendants' motion for summary judgment on Plaintiff's

assault and battery claim.

_____

[2]Further, MCLA §691.1407 (3) provides "[s]ubsection (2) shall not be construed as
altering the law of intentional torts as it existed prior to the effective date of subsection (2)
[1986]", pursuant to this provision, Plaintiff brings forth a pre-MCLA §691.1407(2) common
law analysis to its assault and battery claim and Defendants' governmental immunity.  The Court
also finds that there is no Michigan common law immunity available for a police officer's
assault, battery and use of excessive force upon an arrestee.  See *Blackman v. Cooper,* 89 Mich.
App. 639 (1979).

14

**CONCLUSION:**

The Court denies Defendants' Motion for Summary Judgment in its entirety.

**SO ORDERED.**


s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  April 27, 2005

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on April 27, 2005.


s/Jonie Parker
Case Manager

15